Linda E. AVERILL and Advocates for Averill, Plaintiffs,

v.

CITY OF SEATTLE, et al., Defendants.

No. C03–2508L.

United States District Court, W.D. Washington.

July 14, 2004.

**1174**

Daniel Hoyt Smith, MacDonald, Hoague & Bayless, Seatle, WA, Michael C Kahrs, Seattle, WA, Todd Maybrown, Allen, Hansen & Maybrown, P.S., Seattle, WA, for Linda E Averill, Advocates for Averill, Plaintiffs.

Carlton WM Seu, Seattle City Attorney's Office, Seattle, WA, for Seattle City of, Ethics and Elections Commission City of Seattle, Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION

LASNIK, District Judge.

This matter comes before the Court on "Plaintiffs' Motion for Summary Judgment" and "Defendants' Motion for Summary Judgment." During the preliminary injunction phase of this litigation, plaintiffs submitted evidence showing that individuals and entities espousing views that are virtually identical to those advocated by plaintiffs have been subjected to threats and harassment due to their beliefs and that there was a reasonable probability that the publication of the names, addresses, and/or employers of plaintiffs' supporters would expose them to the same sort of invective that the Freedom Socialist Party and its members have experienced in the past. Based on this showing, the Court preliminarily enjoined defendants from enforcing certain campaign disclosure requirements related to the September 16, 2003, primary election for Seattle City Council, Position No. 5. The parties have now filed cross-motions for summary judgment that require the Court to determine whether or not defendants may publicly identify the people who contributed to or received disbursements from the 2003 Averill campaign.[1]

The rights at issue in this case and the analysis the Court must apply in determining whether defendants' campaign disclosure requirements infringe those rights

---

1. The scope of the relief sought by plaintiffs is not clear. To the extent they seek a declaration that they cannot be required to disclose contributor information at any point in the future, the Court declines to make such a ruling. As discussed below, the exemption analysis is fact specific and depends on, among other things, the surrounding political climate and recent indications of hostility, neither of which can be determined in advance. Although the Court finds that the cir-

cumstances surrounding the 2003 election justify an exemption, any future claim of exemption will require a fresh look at the facts and surrounding circumstances. *See, e.g., McConnell v. Federal Elections Comm'n*, 540 U.S. 93, 124 S.Ct. 619, 692, 157 L.Ed.2d 491 (2003) (Supreme Court's rejection of plaintiff's facial challenge to disclosure requirements "does not foreclose possible future challenges to particular applications of that requirement.").

are well established. As the Supreme Court noted in *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91–92, 103 S.Ct. 416, 74 L.Ed.2d 250 (1982):

> The Constitution protects against the compelled disclosure of political associations and beliefs. Such disclosures can seriously infringe on privacy of association and belief guaranteed by the First Amendment. Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs. The right to privacy in one's political associations and beliefs will yield only to a subordinating interest of the State that is compelling, and then only if there is a substantial relation between the information sought and an overriding and compelling state interest.

(internal quotation marks and citations omitted). In the context of these motions for summary judgment, both parties acknowledge that merely asserting that one is associated with a minor party or that one espouses dissident views is not enough to outweigh the public interests served by campaign disclosure laws.[2] Rather, the candidate or party must provide evidence showing "a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties." *Brown*, 459 U.S. at 93, 103 S.Ct. 416 (quoting *Buckley v. Valeo*, 424 U.S. 1, 74, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)). The Supreme Court recently reaffirmed this analysis in *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 124 S.Ct. 619, 692, 157 L.Ed.2d 491 (2003).

Defendants argue that plaintiffs have failed to provide any evidence from which the factfinder could conclude that there is a reasonable probability that contributors or vendors would suffer threats, harassment, or reprisals if their names were publicly disclosed. In particular, defendants argue that the evidence of past threats and harassment against leaders and visible members of the Freedom Socialist Party or Radical Women cannot support a finding that those who merely contribute to or provide services for such parties will be similarly targeted. This is the same logical leap, however, that the Supreme Court discussed with approval in *Buckley* and actually made in *Brown*. In

---

2. There are at least three compelling state interests that are advanced by campaign disclosure laws. First, disclosures regarding where political campaign money comes from and how it is spent allow voters to place candidates "in the political spectrum more precisely than is often possible solely on the basis of party labels and campaign speeches." *Buckley v. Valeo*, 424 U.S. 1, 66–67, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Second, detailed information regarding contributors and their contributions may deter attempts to use money to influence elections and/or buy post-election favors from the candidate. *Buckley*, 424 U.S. at 67, 96 S.Ct. 612. Third, record keeping and reporting are essential to the government's ability to detect and punish those who seek to avoid the contribution limitations imposed by the legislature. *Buckley*, 424 U.S. at 67–68, 96 S.Ct. 612. Given these important government interests, the media has come to view any exemptions from disclosure as a restriction on its First Amendment right to investigate corruption and reveal violations of the campaign finance reform laws, a task made much easier since the advent of mandatory disclosure requirements (consider, for example, the highly-publicized and politically-damaging discovery that people associated with Rick's strip club had orchestrated multiple contributions to incumbent City Council members during the 2003 campaign in which Averill participated). Nevertheless, the Supreme Court recently reaffirmed that the First Amendment right of political candidates and their supporters to freely associate will override the state's compelling interests in open and fair elections when the proper showing is made. *McConnell*, 124 S.Ct. at 690–93.

*Buckley,* the Supreme Court expressly noted that minor parties may present "specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself" to show a reasonable probability of future threats against contributors and vendors. *Buckley,* 424 U.S. at 74, 96 S.Ct. 612. When faced with evidence of public and private harassment of a socialist party and its members, the Supreme Court concluded that public disclosure of supporters' names would make them vulnerable to threats, harassment, and reprisals. *Brown,* 459 U.S. at 97, 103 S.Ct. 416. In light of the important First Amendment interests at stake, the Court reasoned that even small risks associated with the publication of supporters' names could deter contributions and/or the provision of services and that such deterrence could "cripple a minor party's ability to operate effectively and thereby reduce 'the free circulation of ideas both within and without the political arena.' " *Brown,* 459 U.S. at 98, 103 S.Ct. 416.[3]

Defendants argue that the Supreme Court's conclusion that evidence of past harassment of minor parties and their members can support a finding that contributors would likely be subject to similar harassment was made without the benefit of expert testimony and must be reevaluated in light of the record in this case. Defendants rely on the opinions of James Wright, a threat assessment expert with thirty years experience investigating threats, harassment, and assault cases for the Federal Bureau of Investigation. Mr. Wright opines that:

(1) "the threats, harassment, and acts of violence enumerated in the declarations provided for review have little or no bearing on an assessment of the probability that contributors to Advocates for Averill would be subjected to similar acts." Letter Report (dated 12/1/03) at 1.

(2) the threats, harassment, and violence reported by the party and its members all indicate a "low risk of attack." Letter Report (dated 12/1/03) at 2.

(3) "[w]hile declarants present a compelling case of victimization by threats, harassment, and hateful behavior ... it is my opinion with a reasonable degree of certainty that the most visible, vocal, and influential individuals and symbols (e.g., signage, offices) of a belief or organization become the lightening rods for those who choose to express their opposition through threats, harassment,

---

**3.** This legal principal of defending certain First Amendment rights through presuming that damage will occur upon publication of certain facts, such as the names of contributors, is not unique to this area. The media rightly justifies using such tactics as anonymous sources (*see, e.g.,* Cheryl Phillips, et al., *Airport–Security System in U.S. Riddled with Failures,* Seattle Times, July 11, 2004, at A1) and protecting the identity of its sources from revelation (*see, e.g.,* Howard Kurtz, *A Deep Throat Dilemna: Reporters Pressured to Disclose Sources,* The Washington Post, Oct. 6, 2003) as necessary to further its First Amendment right to gather and disseminate facts. The media is not forced to prove that harm will occur if disclosure is required: rather, there is a presumption that revealing a source now will cause sources to refuse to speak to reporters in the future. Nor does the media accept the argument that sources have no reason to feel the threat of retaliation or retribution if they are named in articles because laws are already in place to protect employees who reveal facts about fraud or misuse of funds by employers or government agencies. The media should be able to see that certain similar presumptions of harm and limitations on the disclosure of names might be as necessary to protect the First Amendment rights of others to association and speech as it is to protection the media's First Amendment rights to gather and disseminate facts.

and intimidation. I am aware of no reasonable basis for concern that contributors or vendors would be targeted." Letter Report (dated 12/1/03) at 4.

Mr. Wright's first opinion seems to contradict the legal analysis set forth in *Buckley* and *Brown,* where the Supreme Court determined that evidence of past threats, harassment, and reprisals suffered by party members supports an inference that the compelled disclosure of supporters' names is reasonably likely to lead to similar injuries. In addition, it appears that Mr. Wright's opinion on this matter would not satisfy the requirements of *Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Nothing in the record indicates that Mr. Wright's admitted expertise in assessing the validity of, and risks associated with, a known threat qualifies him to give opinions regarding the likelihood of future threats. In order to evaluate, categorize, and investigate threats and the risks they pose, analysts such as Mr. Wright start with the facts and circumstances under which the threat was issued or received. *See* Decl. of Carlton Sue (filed 2/25/04), Exs. D—F. Such assessments help the recipient, law enforcement, and/or private security firms determine whether evasive, preventative, or prosecutorial actions should be taken. Mr. Wright's first opinion, however, does not appear to be based on the fundamental principles of threat assessment discussed in the articles supplied by defendants. Rather, Mr. Wright attempts to use assessments of existing threats to predict whether unknown persons in unknown future situations will resort to threats or harassment against unknown victims. Although this is exactly the issue the Court must consider under *Buckley* and *Brown,*

Mr. Wright's opinion on the matter is not supported by either experience or accepted scientific theory.

With regard to Mr. Wright's second opinion, the fact that the threats and harassment reported by the Freedom Socialist Party and Radical Women give rise to a "low risk of attack" is not particularly relevant. The Supreme Court does not require a showing of actual violence under *Buckley,* instead recognizing that mere threats, harassment, and reprisals have the ability to chill the dissemination of alternative and minority viewpoints. It is the likelihood that supporters will receive threats that must be determined by the Court: whether the perpetrators are likely to carry out their threats against party members does not alter the legal analysis.

Mr. Wright, after acknowledging that plaintiffs have presented "a compelling case of victimization" based on their political beliefs, opines that contributors and vendors will not suffer a similar fate because it is his experience that only "visible, vocal, and influential" party members attract threats, harassment, and intimidation. However, the very purpose of the disclosure requirements from which plaintiffs seek an exemption is to make otherwise hidden supporters "visible" to the public. Random frustrated individuals reacting to opinions with which they disagree often, as Mr. Wright testified, "do so in a way that causes them to expend as little effort and expense as possible." Letter Report (dated 12/1/03) at 3. If disclosure is compelled in this case, a quick search of two web sites (that of the Seattle Ethics and Elections Commission and any telephone directory service) would provide a potential harasser with all the information he or she needs to cheaply, anonymously, and effectively threaten plaintiffs' supporters.[4] Mr. Wright apparently ig-

---

4. In addition, full identifying information would be available from either the campaign

nores the fact that the disclosure requirements at issue will make plaintiffs' contributors "visible" and easily accessible, making them analogous to the political operatives Mr. Wright acknowledges are at risk.

Having fully considered Mr. Wright's expertise and the opinions offered, the Court finds that plaintiffs' evidence of threats, harassment, and reprisals directed against individuals or organizations holding similar views satisfies their burden under *Buckley.* 424 U.S. at 74, 96 S.Ct. 612. When advocating beliefs and making statements that are virtually identical to those espoused by plaintiffs, the Freedom Socialist Party and its members have been threatened and harassed on a number of occasions:

- "Two in the chest, one in the head, pull the trigger and the commie is dead"
- "Fear not. You will be 'Turned off' long before your Communist Cancer has even begun to spread."
- "Someone should put a fucking bomb in your god damn office, you son of a bitch!"
- "I can't wait to kill you" and
- "You ought to be round up and shot and pissed on."

In addition, frequent hang-ups and crank calls consisting of laughter and the word "psycho" constitute harassment, especially when received by party members at their homes. If the disclosure requirements at issue here were enforced, the publication of the names and other identifying information of plaintiffs' contributors and vendors would make them easy targets for just the type of anonymous vitriol experienced by the known supporters of related parties.

 The Court finds that there is a reasonable probability that the publication of contributors' identifying information will subject them to future threats, harassment, and reprisals.[5] Even if the distinction Mr. Wright draws between "visible, vocal, and influential" party members and mere contributors has some validity, "First Amendment freedoms need breathing space to survive." *Keyishian v. Board of Regents,* 385 U.S. 589, 604, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). Where there is a significant risk that the exercise of First Amendment rights would be chilled by forced disclosure, the Court should err on the side of protecting those freedoms which are essential to the continuing health of our republic. *Federal Election Comm'n v. Hall–Tyner Election Campaign Comm.,* 678 F.2d 416, 421–22 (2nd Cir.1982). The public's compelling interest in fair elections before an informed electorate has been adequately served by the production of coded contribution and expenditure data that allowed the government to monitor the size and distribution of plaintiffs' contributions while protecting the identity of their supporters. No further disclosures will be permitted or required.

Plaintiffs also challenge the constitutionality of SMC 2.04.320, which authorizes the Seattle Ethics and Elections Commission to grant an exemption from the disclosure requirements if the applicant:

> has demonstrated by a reasonable probability that the compelled disclosure of contributors' names will subject the con-

---

or the Commission.

**5.** Defendants rely heavily on the fact that none of the individuals identified as supporters on Averill's web site during the campaign has been subjected to threats, harassment, or reprisals. The Court has considered this fact in its analysis, but remains persuaded that, given the party's long and consistent history, there is a reasonable probability of future threats to those who are publicly identified with the cause.

tributors to threats, harassment, or reprisals from either government officials or private parties, and that as a result of such disclosure it is reasonably probable that advocacy of a dissident view will be hindered and the right to free association chilled.

Plaintiffs argue that the municipal code improperly requires an applicant to show three separate things (reasonable probability of future threats, interference with advocacy, and a chill on the exercise of First Amendment rights) whereas *Buckley* and *Brown* require only the first showing. Defendants argue that the second and third elements of SMC 2.04.320 accurately capture the underlying rationale of *Buckley*, noting that the Seattle Ethics and Elections Commission found the code provision to be coextensive with the *Buckley* standard. After reviewing the elements of SMC 2.04.320, the Commission stated:

> The applicable standard for a reporting modification in SMC 2.04.320 is consistent and coextensive with *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), in that each requires a showing that compelled disclosure of contributors' and vendors' names would subject them to a reasonable probability of threats, harassment, or reprisals, and that as a result of such disclosure it is reasonably probable that advocacy of a dissident view will be hindered and the right to free association chilled. The Commission reads the test as conjunctive; both *Buckley* and the Seattle Municipal Code establish both parts of this test which must be met in order to entitle the applicant to a modification.

Commission's Decision and Order Denying Request for Modification at 3, *In the Matter of Linda Averill and her Campaign Committee* (7/18/03).

■ Although the Supreme Court took great pains to explain how the likelihood of threats and harassment could discourage political associations and silence alternative viewpoints, it required a showing of only the first of the three elements set forth in SMC 2.04.320. Under *Buckley*, evidence that there is a "reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals" gives rise to the legal presumption that such disclosure would adversely impact rights of association and advocacy. As interpreted and applied by the Seattle Ethics and Elections Commission, however, SMC 2.04.320 seems to require the applicant to make three separate showings, raising the possibility that he or she could establish a reasonable probability of future threats and still not obtain an exemption from disclosure. Such a result would be, and in this case was, contrary to the analysis set forth in *Buckley* and the holding of *Brown*.[6] If the Commission applies SMC 2.04.320 in the proper way, it would consider the chilling effect of disclosure only as context for the factual showing that an applicant must make, namely, that there is "a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties." *Brown*, 459 U.S. at 93, 103 S.Ct.

---

6. The Seattle Ethics and Elections Commission's finding that SMC 2.04.320 is "consistent and coextensive" with *Buckley* rests on an incorrect reading of the case law. *Buckley, Brown,* and *McConnell* do not require a candidate to show both that there is a reasonable probability of future threats and a reasonable probability that advocacy will be hindered and the right to free association will be chilled. Either a proper recognition of this *Brown* standard by the Commission or an amendment of SMC 2.04.320 by the City Council would bring the regulation into compliance with controlling precedent from the United States Supreme Court.

416. Although SMC 2.04.320 was unconstitutional as applied to plaintiffs during the 2003 campaign, it could be interpreted to mirror the requirements of *Buckley*. Such an administrative (or state judicial) interpretation would effectively amend the municipal code "as definitely as if it had been so amended by the legislature." *Winters*, 333 U.S. at 514, 68 S.Ct. 665. The Court therefore declines to strike the statute as unconstitutional on its face.

For all of the foregoing reasons, plaintiffs' motion for summary judgment is GRANTED and defendants' motion for summary judgment is DENIED. The Court finds that the compelled disclosure of the names, addresses, and/or employers of contributors to and vendors for plaintiffs' 2003 campaign would violate plaintiffs' rights to freedom of speech and freedom of association. The Court also finds that SMC 2.04.320 is unconstitutional as applied because the Seattle Ethics and Election Commission interpretation improperly required plaintiffs to make showings not required by relevant Supreme Court precedent. The Clerk of Court is directed to enter judgment in favor of plaintiffs and against defendants.